TERRITORY *v.* LOPEZ and another.

January Term, 1884.

1. DISQUALIFICATION OF JUROR—VOIR DIRE.

Technically, upon the trial of a juror for general or absolute disqualification under the statute, and expressly for bias, the challenge should be first interposed and the evidence introduced afterwards; but where, upon a *voir dire*, it appears that the juror is not the head of a family, a challenge therefor may be disposed of upon the evidence already received.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—ABSENCE OF DEFENDANT.

It is error for the court, on trial for felony, after the jury have retired. to receive them again, in the absence of the defendant and his attorney, and give them further instructions verbally as to the law of the case.

3. SAME—REASONABLE DOUBT.

In a criminal case, it is error to instruct the jury that they must determine a fact "according to the evidence, and just as they would determine any fact in their own private affairs." The jury must be satisfied, to the exclusion of every reasonable doubt, that such fact has been established by the evidence.

*William Breeden*, Atty. Gen., for the Territory.

*Catron, Thornton & Clancy*, for appellants.

BRISTOL, J. The defendants below, Crecencio Lopez and Manuel Casias, who are appellants here, were jointly indicted for cattle stealing in the district court for the first judicial district and county of Colfax, and convicted and sentenced to five years' imprisonment in the territorial prison. A large number of errors are assigned on behalf of the appellants; only a few of which do we deem it necessary to notice. Two of these errors are that the court below abused its discretion in severally overruling motions for a change of venue and for a continuance. Upon a careful examination of the whole record, including the affidavits on which such motions were made, and the evidence disclosed on the trial, and especially the evidence of the defendants themselves, we cannot conceive how the defendants could have acquired any advantage by a change of venue or a continuance, except the possible opportunity that might arise for them to escape or for the evidence to be suppressed by the death or absence of wit-

nesses. Under the circumstances, there was no abuse of discretion in overruling the motions for a change of venue and for a continuance.

Another error assigned is that the court below erred in overruling challenge to the juror John Carico on the trial thereof, the ground of the challenge being that he was not the head of a family. Our statute specifies as one of the necessary qualifications of every juror, grand or petit, that he must be the head of a family. If not the head of a family he is absolutely disqualified as a juror; and if challenged on that ground, and on the trial thereof it is conclusively shown by the evidence that he is not the head of a family, it would be error on the part of the court to allow the juror to remain on the trial panel, however worthy he may be in character and in other qualifications required by law. As to this assignment of error, the record discloses the following facts: "That one John Carico was called as a juror in said cause, who also being duly sworn the truth to speak as to his qualifications as a juror in said cause, did then and there under oath say to the court that he was not the head of a family; that he was not a married man; that he had no children; that he and his partner kept a mess and house, at which he, his partner and employes ate and lived; that he, his partner, and their employes were all adults, and that no other persons ate or lived with them. Therefore the said defendants, through their attorneys, challenged and objected to said Carico as a juror in said cause for the reason that he was not a qualified juror according to law to try said cause, he not being the head of a family; but the court then and there rendered its judgment and decision overruling said challenge and objection, and directed and ordered said Carico to be sworn as a juror to try said cause."

As presented by the record it would seem that no evidence was taken *after* the challenge had been interposed, but that the court disposed of the same on the evidence received in the previous examination of this juror as to his general qualifications. Our statutes do not specially prescribe the manner in which a challenge to an individual petit juror shall be tried. But they do provide that the necessary qualifications of grand and petit jurors shall be the same; and they further provide how a challenge to an individual grand juror shall be tried, when the ground of challenge is that he is a minor, or that he is an alien, or that he is insane, or that he is the prosecutor upon a charge against the defendant, or that he is a witness on the part of prosecution, or that such a state of mind exists on his part in reference to the case of either party which satisfies the court in the exercise of a sound discretion, that he cannot act impartially and without prejudice to the substantive rights of the party challenging. Comp. Laws N. M. (1865) 502. As to the trial of each of the foregoing causes of challenge to any grand juror, the statute provides as follows: "The challenge * * * must be entered upon the minutes and

tried by the court, provided that no person of the grand or petit jury shall be challenged after he has been sworn." Id.

The uniform practice of the courts has been to try all challenges to individual jurors, whether grand or petit, in the manner here pointed out. To be technically correct, therefore, on the trial of any such challenge, the challenge should be interposed first, and the evidence introduced afterwards. On this point Mr. Bishop, in his work on Criminal Procedure, (3d Ed.) vol. 1, § 934, says: "* * * A formal challenge to the juror or jurors specifying the objection is, in some of our states, required; in others the examination on the *voir dire* precedes the challenge." Be this as it may, there can be no doubt that the juror Carico was disqualified, it appearing conclusively from the evidence that he was not the head of a family.

Objection to a juror on the ground of general or absolute disqualification under the statute, must be considered in a different light from an objection on the ground of bias, merely. The latter is addressed to the sound discretion of the trial judge, while if the former is sustained by the evidence, the rejection of the juror becomes mandatory under an arbitrary rule of law. This court is not disposed to favor this particular ground of challenge by any very strict construction of what constitutes the head of a family. But the term must be understood and applied in its ordinary acceptation. And the most liberal interpretation that could be given necessarily requires that the head of a family must be in a position to exercise some degree of authority or control over the conduct and means of support of a person or persons who live with him, and who look to him for guidance and support. Even the relations of parents and son may be such as to place the son at the head of the family. This relation would subsist if his parents lived with him and looked to and depended on him for their support. But two equal partners living together in the same house, and under a contract with their employes as a part of the consideration should board and lodge them at their house, and all, partners and employes, should eat at the same table, would not, in and of itself, constitute the family relation within the meaning of the statute. Such relation must consist of some tie closer in its moral obligations, and of greater permanence in its character than merely boarding employes during the limited term of their service; and as to two equal partners living and messing together as a matter of convenience and economy, perhaps, in their business relations, neither could be considered the head of the other in the sense of the *family* relation.

It is also assigned as error that after the jury had been charged by the court and had retired to deliberate they returned and received verbal instructions from the court in the absence of the defendants and their attorneys. The record relating to this ground of error is as follows: "The jury * * * having heard the evidence and the instructions of the court that were given in writing retired to

their room  \*  \*  \*  to deliberate on their verdict.  \*  \*  \*  That said jury not having agreed upon a verdict in said cause  \*  \*  \* they were brought by the sheriff into court, *in the absence of the defendants and their attorneys* and in the absence of the attorney of the territory, when the judge of the court stated to them *verbally,* in substance, and not in writing, in answer to an inquiry by one or more of said jurors *as to where those men were driving those cattle, that the jury must determine that fact according to the evidence, and just as they would determine any fact in their own private affairs."*

The defendants were being tried for grand larceny, which under our law is a felony. The doctrine seems to be well settled that after the jury have been instructed and have retired to consider of their verdict, in all trials for felony it would be irregular and improper for the court to receive the jury, or to have any communication with them touching the case submitted to them, in the absence of the defendant. In all such cases the presumption of law is that the irregularity *per se* constitutes error. On this subject Mr. Bishop says: "It is a principle pervading the entire law of procedure in criminal causes, that after indictment found, nothing shall be done in the cause in the absence of the prisoner." 1 Bish. Crim. Proc. § 682. To this principle as a rule of law there are no exceptions other than in the lower class of misdemeanors where a fine only, and no corporal punishment may be imposed, and in a few instances of orders within the discretion of the presiding judge, such as an order on a motion for a continuance. And even such motions, if made on behalf of the prosecution, cannot be entertained except on notice to the prisoner or his counsel. Id. §§ 684, 685. In regard to felonies Mr. Bishop further says: "In felonies it is not in the province of the prisoner, either by himself or by his counsel, to waive the right to be personally present during the trial." Id. § 686. This is strong language, but it is unquestionably the law. Giving instructions to the jury are as much a part of the trial as is the taking of testimony or receiving the verdict. The charge to the jury is often the most important incident in the trial in its influence upon the minds of the jury in finding a verdict. If at any time during the progress of the trial it can be to the interest of the prisoner with his counsel to be present in open court, it is while the presiding judge is instructing the jury as to any rule of law to be observed by them in arriving at a verdict.

In the case of *Prine* v. *Com.* 18 Pa. St. (6 Harris,) 103, the record disclosed the facts that the prisoners were tried and convicted of burglary, but at the time of the rendition of the verdict the prisoners' counsel were present and the prisoners *absent.* Defendant's counsel thereupon waived the presence of the prisoners and had the jury polled, when they severally answered that they found the defendants guilty. On writ of error the appellate court held that it is undoubtedly error to try a person for felony in his absence, even with his consent.  \*  \*  \*  No precedent can be found in which his pres-

ence is not a postulate *of every part of the record.*    *   *   *   These
things are matter of substance and "not peculiar to trials for mur-
der; they belong to every trial for felony at the common law, because
the mitigation of the punishment does not change the character of
the crime.    *   *   *   It is unnecessary, however, to speak of dele-
gated authority; for the right of the prisoner to be present at his
trial *is inherent and inalienable.*"

After the jury have been charged by the court, and they have re-
tired to deliberate, it is always proper for them to ask the bailiff in
charge to conduct them before the court for further instructions. But
in all such cases the proper practice would be to send for the pris-
oner and his counsel, and, as soon as they come into court, to have
the names of the jurors called, and if all are found to be present, the
court will then receive any communication they have to make, and
instruct them accordingly.    Mr. Bishop more elaborately puts it
thus: "After the jury have retired to deliberate on their verdict, there
may be further communication between them and the court at the
desire of either. If at the court's, an officer is sent for them, and it
takes place in open court; the judge has no right to visit them for the
purpose in their room, or otherwise communicate with them in pri-
vate.    If at the jury's, they are conducted for the purpose into open
court.    The counsel and the parties should be notified, *and their pres-
ence is a right or necessity, the same as during the prior parts* of the trial.
The instructions desired on the one side or the other and required by
the circumstances will then be given." 1 Bish. Crim. Proc. (3d Ed.)
§ 1000.

If the court, on an occasion of this kind, deems it proper to give
the jury any further instructions or advice as to how they should
determine any question of fact or any rule of law to be observed by
them in arriving at a verdict, such instructions, under our statute,
must be in writing, and should properly enunciate the law on the
subject.    If there be a failure in either of these legal propositions, it
would be error.    The inquiry of the jury as to "where those men
were driving those cattle," may or may not have been material, and
this court may well assume that it was material from the fact that
the court below deemed it proper to give an instruction thereon.    In
saying to them, however, "that the jury must determine that fact
according to the evidence, and just as they would determine any fact
in their own private affairs," was not a proper instruction as to how
they should determine any question of fact in the case.    This in-
struction was well calculated to mislead the jury, as they might infer
therefrom that they were at liberty to determine every question sub-
mitted to them by the same rule.

The only proper instruction under the law that can be given to
the jury as a guide in determining any question of fact necessary to
a conviction, is that they should be convinced or satisfied from the
evidence, to the exclusion of every reasonable doubt, that such fact has

been established. The court may, however, and in the higher grades of felonies it is often its duty to go further and explain what constitutes a reasonable doubt. This rule of law should be applied not only as a general proposition in determining the defendant's guilt, but also to the establishment of each and every element or fact constituting the crime charged. It is always unsafe to attempt any substitute for such an instruction. 1 Bish. Crim. Proc. (1st Ed.) §§ 818, 819. The instruction to the jury that they should determine a question of fact "just as they would determine any fact in their own private affairs," was therefore a violation of this rule of law, and was erroneous. The instruction was also objectionable on the ground of its not being in writing.

In the case of *Territory* v. *Perea*, 1 N. M. 627, this court said that "the statute requiring instructions to a trial jury to be in writing is not directory merely, but mandatory in its terms. In states where similar statutes have been enacted their respective superior courts have uniformly held that oral instructions in whole or in part are error, and sufficient cause for setting aside the judgment and ordering a new trial. The adjudication on this subject present an array of precedents that cannot well be ignored. * * * We are of the opinion that the only proper mode in giving instructions as a charge to a trial jury, and particularly in regard to the higher grades of crime denominated felonies, is for the district court to give in writing all that it deems necessary or even proper to say to the jury in its charge." *Vide*, 45 Mo. 64; 6 Mo. 399; 19 Ill. 82; 43 Cal. 29; 37 Cal. 274; 45 Cal. 650.

Judgment below reversed and cause remanded for a trial *de novo*.

BELL, J.    I concur.