[Crim. No. 689.  In Bank. — March 25, 1901.]

THE PEOPLE, Respondent, v. E. V. METHEVER, Appellant.

CRIMINAL LAW — CAPABILITY OF COMMITTING CRIME — INSANITY — UN-
CONSCIOUSNESS OF ACT — CONSTRUCTION OF PENAL CODE. — Constru-
ing section 21 of the Penal Code, which declares that " all persons
are of sound mind who are neither idiots nor lunatics, nor affected
with insanity," with section 26 of that code, the fifth subdivision
of the latter section, designating " persons who committed the
act charged without being conscious thereof " as not being capable
of committing crimes, does not include persons of unsound mind
previously classed in that section as " idiots, lunatics, and insane per-
sons," but only contemplates cases of persons of sound mind, such as
somnambulists, or persons suffering with delirium from fever or
drugs, " who committed the act charged without being conscious
thereof."

ID. — CHARGE OF MURDER — DEFENSE OF INSANITY — APPLICABILITY OF
INSTRUCTIONS. — Upon the trial of a charge for murder, where the de-
fense is insanity, resulting from any cause, including delirium
tremens, which is but a phase or kind of insanity, the defendant is
only entitled to instructions covering the various phases of insanity
presented to the jury by the evidence, and it is proper to refuse or
eliminate instructions based upon subdivisions 5 and 6 of section
26 of the Penal Code, where there is no evidence of the existence of
the conditions therein contemplated.

ID. — MODIFICATION OF INSTRUCTION — DEGREE OF PROOF OF INSANITY —
REFERENCE TO DEFINITION. — An instruction requested by the de-
fendant, containing the words, " if the jury are satisfied beyond a
reasonable doubt, by the evidence in this case, that the defendant was
either a lunatic or an insane person, etc., then the jury must acquit
the defendant," is properly modified, in the interest of the defend-
ant, by striking out the words, " beyond a reasonable doubt," as the
law does not contemplate that degree of proof of insanity.  It is also
properly modified by adding after the words, " insane person," the
words, " as insanity is defined in these instructions."

ID. — ARGUMENTATIVE INSTRUCTION — HISTORICAL FACTS AS TO DE-
FENSE OF INSANITY. — An argumentative instruction, based upon
true historical facts as to the defense of insanity, in which there is
very little of law involved, though made entirely in the abstract,
and held not prejudicially erroneous in view of former rulings of
this court, is recommended not to be given in the future.

ID. — INAPPLICABLE INSTRUCTIONS AS TO EFFECT OF DRUNKENNESS —
ERROR NOT PREJUDICIAL. — Where there was no evidence in the case
indicating any intoxication of the defendant at the time of the com-
mission of the crime, and the theory of the defense was that

he was afflicted with *delirium tremens* at the time of the killing,
as the result of total abstinence from liquor for several days pre-
vious, instructions as to the effect of drunkenness in cases of crime
are inapplicable; but if they are abstractly correct, and have met
the approval of this court, and show upon their face that no injury
resulted therefrom to the defendant, the giving of them is not preju-
dicial error.

ID. — EFFECT OF VOLUNTARY INTOXICATION — DEGREE OF CRIME — CRIM-
INAL INTENT. — No criminal act committed by a person in a state of
voluntary intoxication can be excused or rendered less criminal on
that ground. Evidence of such intoxication is only to be consid-
ered, in cases of murder, for the purpose of determining the degree
of the murder, and in other cases, for the purpose of determining
a particular purpose, motive, or intent, which is a necessary element
to constitute any particular species or degree of crime.

ID. — IMPROPER INSTRUCTION AS TO POWER OF WILL. — A requested in-
struction, intimating that if defendant's mind was so affected that
he had not sufficient power of will to abstain from killing the de-
ceased, he should be found not guilty, was properly refused.

ID. — INSTRUCTION AS TO EXPERT WITNESSES — ERROR NOT PREJUDI-
CIAL. — An instruction that the value of the testimony of the de-
fendant's expert witnesses depended largely upon the truth or
falsity of the facts given to them, and upon which their opinion
was based, though erroneous in not including the testimony of ex-
pert witnesses for the people, and though it involves no principle of
law, and would better not be given, even if inclusive of all expert
witnesses, yet, being simply a declaration of a truism, the giving of
it was not prejudicial error.

APPEAL from a judgment of the Superior Court of Los An-
geles County and from an order denying a new trial. B. N.
Smith, Judge.

Frank F. Davis, and Davis & Morrison, for Appellant.

Tirey L. Ford, Attorney-General, and H. A. Melvin, for Re-
spondent.

GAROUTTE, J. — Defendant has been convicted of murder,
and the death penalty adjudged. The homicide occurred at
the village of Long Beach, Los Angeles County, July 25, 1899.
Dorothy McKee, an attractive young woman of about twenty-
four years of age, lived with her mother in a small house, and
they were engaged in conducting a bakery business in the
front part thereof. This house was divided by a partition, and
in the other part lived the defendant, who there carried on a
small shoe-store business, and as a cobbler worked at his

trade. The relations between these three people were of the most friendly character. Defendant received his food from the table of the McKees, and their daily intercourse was continuous. On the morning of July 25th, Dorothy McKee and a friend, Mrs. Scudder, went for a bicycle-ride at about six o'clock. Soon thereafter, defendant mounted his bicycle, followed the course the two women had taken, and meeting them returning, directed his bicycle against that of deceased, Dorothy, and the moment both were dismounted, he fired either two or three pistol-shots at her, which resulted in her immediate death. He then inflicted a serious wound upon himself, by a shot from the same pistol.

The defendant relied upon the plea of insanity, claiming that this insanity arose from several serious injuries received upon his head during the course of his past life, conjoined with an attack of *delirium tremens*, which he claims actually encompassed him at the time of the killing. There is but little evidence to support this claim. Indeed, there is hardly a circumstance to support the claim of *delirium tremens*, aside from defendant's own testimony; while the evidence to the contrary is almost overwhelming. Under this state of the case, it is most unfortunate if the penalty of the law for this otherwise most cruel murder cannot be promptly administered upon defendant. His reliance for an order giving him a second trial is based largely upon exceptions taken to the rulings of the trial court in the giving and refusing of certain instructions bearing upon the law.

The court gave this instruction as modified: "The jury are instructed that the following persons, among others, are not capable of committing crime under the laws of the state of California: Lunatics and insane persons, *persons who commit the act charged without being conscious thereof, persons who commit the act charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence;* and if the jury are satisfied, *beyond a reasonable doubt,* by the evidence in this case that the defendant, when he killed the deceased, was either a lunatic or an insane person [as insanity is defined in these instructions], *or was not conscious of the act when he committed it, or that the same was committed from misfortune or by accident, and it also appears that there was no evil design, intention, or culpable negligence on the part of the defendant,* then the jury must acquit the defendant."

The modification made by the court consisted, first, in eliminating all that portion of the instruction which we have identified by italics; and second, by inserting that portion thereof appearing in brackets. The major part of the elimination is composed of portions of section 26 of the Penal Code, which section, among other matters, provides:—

"All persons are capable of committing crimes except those belonging to the following classes: . . .

"2. Idiots;

"3. Lunatics and insane persons; . . .

"5. Persons who committed the act charged without being conscious thereof;

"6. Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."

There is no claim whatever in this case that subdivision 6 of the section has any application, so we pass that portion of the elimination without comment. There is a claim that subdivision 5 has an application to this case; yet the court is fully satisfied that it has not. Section 21 of the Penal Code declares: "All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity"; and the court is entirely convinced that subdivision 5 does not contemplate cases of unsound mind,—that is, cases of idiots, lunatics, and insane persons,—but, upon the contrary, contemplates only cases of persons of sound mind, — as, for example, somnambulists, or persons suffering with delirium from fever or drugs. There is no claim of the existence of any such conditions here, and if the claim were made, there is an absolute dearth of evidence to support it. There is no reason why subdivision 5 should be given any broader construction, for as to persons afflicted with unsound minds, subdivisions 2 and 3 include them all.

It may be further suggested, in answer to the claim that the defendant did the act while unconscious thereof by reason of his insanity, that instructions covering every phase of the question of insanity, including that of *delirium tremens,* were presented to the jury,—instructions of which no complaint is here made,—and where the defense is insanity, that is all the defendant is entitled to at the hands of the court. If the law excuses him for his acts under these circumstances, it is

not by reason of his unconsciousness at the time the act is committed, but by reason of his insanity. *Delirium tremens* is but a phase or kind of insanity. If defendant was unconscious at the time he committed the act, he was only unconscious by reason of his *delirium tremens*,—that is, by reason of his insanity. The elimination of the words, "beyond a reasonable doubt," was clearly proper, as the law does not demand that measure of proof in order that insanity may be established; and in addition thereto, it may be further said that the elimination of this language from the instruction was strongly favorable to defendant. The language inserted by the court, as indicated by the brackets, was properly inserted.

The following instruction is assailed by appellant's counsel: "In prosecutions for crimes, the defense of insanity is often interposed, and thereby becomes a subject of paramount importance in criminal jurisprudence. A due regard for the ends of justice and the peace and welfare of society, no less than mercy to the accused, requires that it should be thoroughly and carefully weighed. It is a plea sometimes resorted to in cases where aggravated crimes have been committed under circumstances which afford full proof of the overt acts, and render hopeless all other means of evading punishment. While, therefore, it ought to be viewed as a not less full and complete than it is a humane defense when satisfactorily established, yet it should be examined into with great care, lest an ingenious counterfeit of the malady furnish protection to guilt."

While the statements contained in this instruction are true as historical facts, there is but little law involved in them. And while we see no legal reason why the information therein contained should be given to the jury in the court's charge, yet, upon an examination of these statements, we find them made purely and entirely in the abstract. They are not directed toward the defendant and his case, and assuming the jury to be an intelligent body of men, the instruction could have done him no prejudice. Yet, in view of the later decisions of this court, wherein the rights of a defendant to have the facts of his case passed upon by the jury alone have been most zealously protected, and where argumentative instructions have been condemned, we would suggest that, in the future, this instruction be not given. At the same time, it has been given so often in the past, and approved by this

court, that it will not now be held prejudicially erroneous. In *People* v. *Dennis*, 39 Cal. 636, it was carefully considered, and the court there said: "We are satisfied that the instruction as given was entirely proper under the circumstances developed by the evidence in this case." We find the decision there laid down followed in *People* v. *Bumberger*, 45 Cal. 650; *People* v. *Pico*, 62 Cal. 55; *People* v. *Larrabee*, 115 Cal. 159; *People* v. *McCarthy*, 115 Cal. 264; *People* v. *Allender*, 117 Cal. 81.

The court instructed the jury: "It is a well-settled rule that drunkenness is no excuse for the commission of crime. Insanity produced by intoxication does not destroy responsibility, when the party, when sane and responsible, made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of crime, and for that purpose it must be received with great caution."

We are at a loss to understand why instructions as to drunkenness were given to the jury in this case. Upon examination of the record we find no evidence whatever tending to indicate that defendant was intoxicated when he killed this young woman. No one had seen him take a single drop of intoxicating liquor; no one testified that he looked like a drunken man, or acted like one. He rode his bicycle for a considerable distance immediately prior to the killing. He himself testifies that he had entirely abstained from liquor for a period of five days prior to the killing. Indeed, the whole theory of his defense is, that he was afflicted with *delirium tremens* at the time of the killing, induced by his total abstinence from liquor for the previous five days. As against this evidence we have the testimony alone of various parties, to the effect that immediately after the homicide defendant's breath smelled of liquor. Upon this state of facts there was no question of present intoxication in the case at the time of the homicide; and therefore no instructions to the jury upon the matter of drunkenness were demanded. Hence the law here involved contained abstract propositions; but whether or not the instruction was legally sound or unsound upon its face, it

is apparent that no injury resulted to defendant from the giving of it.

It may be further added that this instruction has repeatedly met the approval of the court. (*People* v. *Lewis*, 36 Cal. 533; *People* v. *Williams*, 43 Cal. 352; *People* v. *Ferris*, 55 Cal. 592; *People* v. *Jones*, 63 Cal. 169; *People* v. *Vincent*, 95 Cal. 428; *People* v. *Fellows*, 122 Cal. 239.)

We are also satisfied the instruction is sound in declaring that "evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of crime."

Section 22 of the Penal Code declares: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." This section simply means that when a particular motive, purpose, or intent constitutes a necessary element going to make up a particular crime, or degree of crime, then evidence of drunkenness at the time the act is committed may be shown as casting light upon defendant's mind, in ascertaining the purpose, motive, or intent with which he did the act. In a case of murder, drunkenness may be shown for the purpose of establishing the degree of murder, and for that purpose alone. This was so declared in the Vincent case, *supra*.

In the case of *People* v. *Phelan*, 93 Cal. 112, this court held that drunkenness might be shown in a case of burglary; for there the entry into the building must be made with a particular intent, in order that the crime may be made out; and that case comes directly within the purview of the aforesaid section 22. As a complete review of the authorities covering this principle, and as supporting the conclusion of the court here declared, we cite *Flanigan* v. *People*, and the note found thereunder, in 40 Am. Rep. 560.

An instruction was properly refused, which intimated that if defendant's mind was so affected that he had not sufficient power of will to abstain from killing the deceased, then he should be found not guilty. (*People* v. *Hoin*, 62

Cal. 120;[1] *People* v. *Ward*, 105 Cal. 343; *People* v. *Barthleman*, 120 Cal. 7.)

The court instructed the jury that the value of the testimony of defendant's expert witnesses depended largely upon the truth or falsity of the facts given to them, and upon which their opinion was founded. Why the court did not include in this instruction the testimony of the expert witnesses for the people, we are at a loss to know. If the instruction is to be given at all, certainly it should include the testimony of all expert witnesses, rather than those upon one side of the case. We see no principle of law involved in the instruction, and for that reason it should not be incorporated in the charge to the jury; yet it is apparent that no possible prejudice resulted to the defendant from the giving of it. It was simply a declaration of a truism, — a declaration of a matter of every-day ordinary common sense. In *People* v. *Barthleman, supra,* — a case tried in the same court where the present case was tried, — this same instruction was under consideration by this court, and it was then held not to be prejudicial error to give it. At the same time, the trial court was advised to refrain from giving it in the future. We now reiterate what was said upon that occasion.

The motion for a new trial upon the ground of newly discovered evidence was properly denied.

For the foregoing reasons the judgment and order are affirmed.

McFarland, J., Van Dyke, J., Harrison, J., and Henshaw, J., concurred.

---

[1] 45 Am. Rep. 651.